## LLOYD et al. v. SPALLETTA et al.

### (District Court, E. D. New York. May 18, 1923.)

**Patents ⊚�net328—1,229,102, for talking doll, valid and infringed.**
     The Lloyd patent, No. 1,229,102, for a talking doll, claims 1, 2, 3, and 4, *held* not anticipated, valid, and infringed.

In Equity. Suit by Burt E. Lloyd and others against Salvatore Spalletta; said name Salvatore being fictitious, the true first name being unknown to complainants. Decree for complainants.

Briesen & Schrenk, of New York City, for plaintiffs.
Matthew Spalletta, of New York City, for defendant.

CAMPBELL, District Judge. This is an action brought to restrain the alleged infringement of patent No. 1,229,102, dated June 5, 1917, for talking doll, issued by the United States Patent Office to the plaintiff Burt E. Lloyd, the plaintiffs E. I. Horsman and Ætna Doll Company, Inc., and Averill Manufacturing Company being grantees of the exclusive right or license to make and sell dolls containing and embodying the said patented device or voice, manufactured for said two corporate plaintiffs by the said plaintiff Lloyd. The answer of the defendant raises two issues, the infringement of the patent in suit, and the validity of said patent.

The patent in suit represents a great step in advance in the doll industry in America, and is of large commercial value. Before the appearance on the market of the "ma-ma" voice, manufactured by the plaintiff Lloyd, and covered by the patent in suit, there was no satisfactory talking doll, although for 25 years there had been efforts made to produce one and the sale of the so-called "speaking dolls" was very small; but almost immediately upon the entrance on the market of the said "ma-ma" voice, produced by the plaintiff Lloyd, the condition changed, and now but very few nonspeaking dolls are sold, the demand being for the "ma-ma" doll. There has been no adjudication of the patent in suit.

Plaintiff's suit is based upon claims 1, 2, 3, and 4 of said patent. In the patent in suit we have an air chamber or bellows, which is adapted to have the air therein compressed and forced in the direction of an opening or aperture; a sounding device in the form of a reed, which is actuated by the air in the course of its travel to the aperture. The sounding device or reed sets up vibrations resulting, in so far as the sounding device is concerned, in a continuous sound. In order to translate these vibrations into an enunciated sound, they are interrupted to produce the word "ma-ma."

The essence of the Lloyd patent is the manner of making this interruption of sound, and to obtain this interruption of sound, a valve mechanism is utilized which penetrates the aperture. This is fundamentally novel. In the preferred embodiment of this principle, the sound vibrations are slowly cut down by the two disks or valves as the distance between them and the aperture gradually diminishes, and is

shut off entirely when one of the valves is completely seated in the aperture, and the emission of sound vibrations is again permitted as the disk passes entirely through the aperture.

After the performance by the last valve of the active or passive operation and the completion of the "ma-ma" sound, the bellows is again inflated, and soundlessly the valves pass back through the aperture, to be in a position to again perform their function. For distinctly articulating the word "ma-ma" there is utilized in this patent what is called therein a resilient lip (preferably rubber). According to said patent the rubber lip may either edge the aperture or may be secured to the valve stem, or to the edge of the valve disks. The resilient lip is secured around the aperture in the manner shown in Fig. 6 of the patent and in Plaintiff's Exhibit No. 4, offered in this action, representing the commercial device.

There is a distinct articulation of the m's in "ma-ma" when the rigid co-operating valve elements come in contact with the resilient lip, hug it, and carry its free edge along with it. Both Plaintiff's Exhibits Nos. 3 (without the lip) and 4 (with it) are good, and are covered by claims 1 and 2; but the particular merit of the more specific features of claims 3 and 4 are clearly demonstrated by the greater perfection of enunciation of Plaintiff's Exhibit No. 4 over Exhibit 3.

There can be no reasonable doubt about the question of infringement, because it would appear that defendant must have had one of plaintiff's devices before him when he constructed his device, as it is substantially an exact reproduction of the plaintiff's commercial device. Examining the defendant's device specifically, in view of the claims in suit, we find that it has an air chamber in the form of a bellows, a sounding device in the form of a reed inclosed in a small cardboard housing situated at one side of the aperture, an aperture through which two valves move to successively close the aperture and thereby interrupt the sound waves or vibrations, thus clearly falling within claims 1 and 2.

The valves in appearance are like a small spool, being made of wood and having a connecting neck. Mechanically this is identical with two spaced disks in the patent in suit. The defendant's wooden spool is exactly the same as the valves of the patent in suit and the plaintiff's exhibit of their commercial structure, in function, location, and spacing both the plaintiff's and defendant's devices operate exactly alike. Air is expelled by the bellows, and the sounding device or reed is actuated by the air in its passage to the aperture; there the air is interrupted by the valves as they successively pass through the aperture. In the defendant's device as well as the plaintiff's patent, and in the plaintiff's commercial structure, is also found the resilient lip (rubber) secured around the aperture, and the valves successively hug it during their passage through the aperture, in order to distinctly articulate the m's in the word "ma-ma," and this is a clear infringement of claims 3 and 4.

Claim 1 of the patent reads:

"A sound-producing device, comprising a sounding device, an air chamber having an aperture, and valves movable through the aperture to successively close and open the same."

Each of these elements is found in defendant's device. There is no substantial difference between claims 1 and 2, except that in claim 2 it is provided that the means for opening and closing the aperture comprise a stem movable through the aperture and having spaced disks to close and open the aperture. Obviously the two heads of the spool used in defendant's device are two disks, which function precisely as called for by claim 2.

Claims 3 and 4 cover the case of the rubber lip. Claim 3 reads as follows:

"In a sound-producing device, a sounding element, an air chamber having an aperture through which sounds issue, and means for opening and closing the aperture, said means comprising a stem movable through the aperture and having spaced disks to close and open the aperture, said aperture having a resilient lip which snugly hugs the disks in passing through the aperture."

Each of these elements is also present in the defendant's device. The resilient lip is located around the aperture, and as the disks pass through the aperture the lip snugly hugs the disks to properly enunciate the word "ma-ma."

Claim 4 is much broader in scope than claim 3, and reads as follows:

"A sound-producing device comprising a sounding element, an air chamber having an apertured part, and a valve part, said parts being relatively movable, one part having resilient means for effecting a stoppage of sound and also one element including spaced sound-stopping portions."

Each element of this claim is found in defendant's device. The scope of this claim is broad enough to cover the resilient means, whether the means are located around the aperture or upon the stem.

The only remaining question to be considered is the bearing of the prior art upon Mr. Lloyd's invention. Twenty-six patents were offered in evidence by the defendant in alleged anticipation of Mr. Lloyd's patent.

The patent in suit was granted June 5, 1917, and four of these patents are too late in date, viz.: No. 1,252,653, issued to Bertocchi, dated January 8, 1918; No. 1,253,030, issued to Gustafson, dated January 8, 1918; No. 1,273,122, issued to Adams, dated July 23, 1918; No. 1,274,031, issued to Gally, dated July 30, 1918. In any event, these patents have no bearing upon the invention of Mr. Lloyd.

The 2 following British patents, issued to Thompson, have no relation whatever to Mr. Lloyd's invention: No. 25,882, dated October 21, 1899, relating to a toy engine which is to be driven by gas or oil; and No. 25,883, dated October 21, 1899, relating to indoor golf, which is played with mechanical figures.

The remaining 20 I will divide into three groups, the first group consisting of the following 5 patents, the first 3 of which are American, the last 2 being British: No. 355,336, dated January 4, 1887, issued to Parker; No. 786,204, dated March 28, 1905, issued to Gally; No. 1,164,088, dated December 14, 1915, issued to Gustafson; No. 232, dated January 22, 1868, issued to Barker; and No. 1,149, dated April 6, 1868, issued to Bryceson—relate to pneumatic actions for pianos or organs, and have to do wholly with controlling the wind or air which

moves the keys and actuates the pipes, strings, or reeds. The purpose of enunciating the sound is not found in the device of any of these patents, and none of them show the structure which Mr. Lloyd claims.

The second group, consisting of 7 patents, the first 4 being American, the last 3 British: No. 1,085,640, dated February 3, 1914, issued to Steiner; No. 1,098,303, dated May 26, 1914, issued to Steiner et al.; No. 1,140,647, dated May 25, 1915, issued to Aronson; No. 1,200,256, dated October 3, 1916, issued to Steiner; No. 1,539, dated December 17, 1892, issued to Heubach; No. 5,937, dated January 19, 1895, issued to Fayaud; and No. 8,470, dated May 27, 1899, issued to Lehmann—relate to devices which cry, whistle, croak, and make similar sounds. These devices are not mechanically intended to articulate sound, and certainly not to say "ma-ma." None of them show the structure of Mr. Lloyd's device, nor do they even come within the same class of devices to which his belongs.

The third group, consisting of 8 patents, the first 5 being American, the sixth British, and the last 2 French: No. 1,140,647, No. 1,140,648, No. 1,140,649, and No. 1,140,650, all issued to Aronson, and dated May 25, 1915; No. 1,193,059, dated August 1, 1916, issued to Rabinowitz; No. 11,356, dated June 23, 1904, issued to Arnold; No. 353,622, dated July 3, 1905, issued to Société, etc.; and No. 459,095, dated August 25, 1913, issued to Société, etc.—disclose devices which operate upon the principle of closing the sound passage by covering it or by abutting against it either a flapper or plate or other like adjunct. This type of device had been on the market for many years, but has proved entirely unsatisfactory, because it did not enunciate "ma-ma," the nearest approach being a sound like "ah-ah," and was not mechanically perfect.

From the examination of the evidence offered as to the prior art, I am convinced of the novelty and utility of Mr. Lloyd's device, and find that it was the first device that produced a "ma-ma" voice with a balanced weight. The use of the two valves which pass through the aperture to successively open and close the same and thereby interrupt the sound, and the use of a resilient lip for articulating the "m's" in the word "ma-ma," as claimed by Mr. Lloyd in his patent and shown in his commercial device, is entirely new, and was not anticipated in any patent issued before the patent in suit.

This patent is a valuable invention, not met by the prior art, and is the first commercially successful "ma-ma" voice that has been produced. Claims 1, 2, 3, and 4 of the patent in suit, the claims on which this suit is based, are valid. Defendant's imitation obviously infringes the patent in suit.

Let a decree be entered in favor of plaintiffs, as prayed for in the bill of complaint, except that no accounting shall be required of defendant, as damages were prevented by the preliminary injunction granted in this action.